**Francis O'HALLORAN**

v.

**Joseph RYAN, Superintendent and the Attorney General of the State of Pennsylvania.**

**Civ. A. No. 88–0381.**

United States District Court, E.D. Pennsylvania.

Jan. 10, 1989.

John Albert Snite, Jr., Philadelphia, Pa., for plaintiff.

Michael P. McIntyre, Asst. Dist. Atty., Allentown, Pa., for defendants.

## OPINION

JOSEPH S. LORD, III, Senior District Judge.

Habeas Corpus. On July 12, 1982 in the Court of Common Pleas of Lehigh County, just before his trial was to begin, Francis O'Halloran purportedly waived his Sixth Amendment right to counsel. Minutes later, he pleaded guilty to a burglary charge, pursuant to a plea bargain he had negotiated earlier with the prosecutor. Several weeks later, just before he was sentenced, he again purportedly waived his right to counsel.

O'Halloran's principal contention in this habeas petition is that his purported waivers of his Sixth Amendment right to counsel were unknowing and therefore invalid, under *Johnson v. Zerbst* and progeny. 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The waivers were unknowing, he says, because the judge who accepted them had not previously advised him of the disadvantages of proceeding *pro se*, and had not sufficiently advised him of his right to appointed counsel. He contends further that the invalidity of his counsel waivers tainted his subsequent guilty plea and sentencing. Unless the Commonwealth eliminates that taint by vacating his sentence and permitting him to withdraw his guilty plea and his counsel waivers, he believes he is entitled to federal habeas relief.

The prosecutor opposes O'Halloran's petition on several procedural grounds. The prosecutor argues that the petition must be dismissed because O'Halloran has abused the writ of habeas corpus, by filing successive petitions, and because he has not exhausted available state remedies. The prosecutor argues in the alternative that if the petition is not dismissed it must be denied because an independent and adequate ground exists which bars federal habeas relief, specifically O'Halloran's failure to comply on direct appeal with a state rule which required him to present his counsel-waiver grounds in the first instance to the trial court. I conclude that O'Halloran's petition must be denied.

### Abuse of the Writ

This is O'Halloran's second habeas petition; his first petition was dismissed for failure to exhaust state remedies. *O'Halloran v. Ryan*, 650 F.Supp. 818 (E.D. Pa.1986), aff'd, 835 F.2d 506 (3d Cir.1987). The prosecutor argues that his present petition must be dismissed pursuant to *Sanders v. United States*, as an abuse of the writ. 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). In *Sanders*, the Court held:

"if a prisoner deliberately withholds one of two grounds for federal collateral relief at the time of filing his first application, in the hope of being granted two hearings rather than one or for some other such reason, he may be deemed to have waived his right to a hearing on a second application presenting the withheld ground. The same may be true if ... the prisoner deliberately abandons one of his grounds at the first hearing. Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, or to

entertain collateral proceedings whose only purpose is to vex, harass, or delay." *Id.* at 18, 83 S.Ct. at 1078, 10 L.Ed.2d at 163.

The prosecutor acknowledges O'Halloran did mention the counsel-waiver grounds in his first petition. Therefore, O'Halloran did not "withhold" the ground entirely. The prosecutor complains, however, that in his first petition O'Halloran presented the counsel-waiver grounds only in a cursory and incomprehensible manner. That amounted to a deliberate effort to withhold the grounds the first time around, the prosecutor claims.

I see no reason to conclude that O'Halloran's failure to present his counsel-waiver grounds in a thorough manner in his first habeas petition was the product of a *deliberate* effort to gain a second hearing, to vex this court, or otherwise to abuse the writ. Rather, I believe his failure was the product of his inability to articulate his many complaints in a cogent fashion on his first try. Nothing in *Sanders* or later cases calls for me to dismiss O'Halloran's present petition under these circumstances as an abuse of the writ. *See also Rose v. Lundy*, 455 U.S. 509, 522, 532, 102 S.Ct. 1198, 1210, 1211, 71 L.Ed.2d 379, 390, 396 (1982) (concurring opinions of Justices Blackmun, Brennan and Marshall, declining to hold that successive petitions which present new grounds must always be dismissed).

### Exhaustion

O'Halloran presents four grounds for relief. The first three are very similar in that all are challenges to the validity of his purported waivers of his Sixth Amendment right to counsel. Specifically, he claims first, that although he "informed the court both at the plea/sentencing of his inability to obtain counsel ... the court assumed [he] was not entitled to have appointed or stand-by counsel." Second, he claims that the "court placed more emphasis upon forcing a quick decision than an [sic] insuring an intelligent and thoughtful course of action." Third, he asserts "there is on the record proof of a deficient colloquy on

waiver of counsel at the plea and no colloquy at the sentencing." Because these grounds are so similar, I refer to them collectively as the "counsel-waiver grounds." The fourth ground O'Halloran presents is that Pennsylvania's Superior Court on direct appeal violated his due process rights by allegedly stating in its memorandum that he had been represented by counsel when he pleaded guilty, when in fact he was not represented.

The prosecutor advances three arguments for his position that O'Halloran has not exhausted his state remedies. The prosecutor contends first, that O'Halloran failed to cite any legal authority in support of his counsel-waiver grounds in his direct appeals to the Superior and Pennsylvania Supreme Courts. Unless the state courts are presented with both the facts and the law, the prosecutor notes, they have not been fairly presented with a claim. *E.g., Gibson v. Scheidemantel*, 805 F.2d 135, 138 (3d Cir.1986).

It is simply untrue that O'Halloran cited no legal authority in his briefs to Pennsylvania's appellate courts. To both courts he cited the case which forms the foundation of his present habeas petition: *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1947). *Pro se* Supplemental Brief to Superior Court, p. 22; *Pro se* allocatur brief, p. 16. I will discuss the *Von Moltke* case at greater length below. For now, it will suffice to say that the *Von Moltke* case not only is pertinent to O'Halloran's claim, it provides considerable support for that claim. Besides citing *Von Moltke*, O'Halloran directed the courts to the pertinent portions of the record. Supplemental brief, pp. 18, 22; allocatur brief, p. 16. Therefore, O'Halloran fairly presented his counsel-waiver grounds to Pennsylvania's appellate courts.

The prosecutor next argues that because O'Halloran did not present the counsel-waiver grounds to the trial court, he cannot have exhausted the grounds. This argument is mistaken. In a factually similar case, the Third Circuit stated that whether a habeas petitioner:

waived two claims on appeal for failure to raise them in post-trial motions is irrelevant to this court's determination of exhaustion. We need only conclude that the claims were fairly *presented* to the state courts in order to determine that there was exhaustion of state remedies.

A proper determination of the waiver issue is, however, relevant to the question of whether [the petitioner] committed a "procedural default." If he did, the default may act as an independent and adequate state ground for denying [him] federal habeas corpus relief.

*Swanger v. Zimmerman,* 750 F.2d 291, 296 n. 8 (3d Cir.1984).

■ Finally, the prosecutor argues that because O'Halloran has not sought relief through Pennsylvania's Post Conviction Hearing Act ("PCHA"), and because he could still do so, his counsel-waiver grounds are not exhausted. 42 Pa.C.S. § 9541 et seq. In *Chaussard v. Fulcomer,* the Third Circuit held that a claim which was presented in an allocatur petition to Pennsylvania's Supreme Court was exhausted, even though the claim was never presented in any PCHA petition. 816 F.2d 925, 928 (3d Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 139, 98 L.Ed.2d 96 (1987). No meaningful distinction exists between *Chaussard* and O'Halloran's present petition.

O'Halloran presented his fourth ground to Pennsylvania's Supreme Court in his allocatur petition. That ground, too, is exhausted.

### Independent and Adequate State Ground

■ In his objections to Magistrate Powers' report and recommendation, the prosecutor argued for the first time that O'Halloran had on direct appeal committed a procedural default which served as an independent and adequate ground barring habeas relief. It is undisputed that O'Halloran did not challenge before the trial court the validity of his counsel waivers. Particularly troublesome is the fact that although O'Halloran eventually retained an attorney who was permitted to and did file

*nunc pro tunc* a motion to withdraw the guilty plea, that counselled motion did not present the counsel-waiver grounds. The Superior Court ruled that under Pennsylvania Rule of Appellate Procedure 302(a), by not raising before the trial court the counsel-waiver grounds, O'Halloran waived them. *Com. v. O'Halloran,* No. 1683 PHL 83, slip op. p. 8, n. 3 (July 26, 1985) [348 Pa.Super. 634, 501 A.2d 293 (Table)] ("slip op.").

To decide whether Pa.R.A.P. 302(a) impedes federal habeas review of the counsel-waiver grounds, I must consider three factors: "whether the state procedural requirement is stated in unmistakable terms, whether the state courts have refused to review the claim on the merits, and whether the state courts' refusal in this instance is consistent with other state decisions." *Reynolds v. Ellingsworth,* 843 F.2d 712, 719 (3d Cir.) *cert. denied,* — U.S. ——, 109 S.Ct. 403, 102 L.Ed.2d 391 (1988), *paraphrasing, Wainwright v. Sykes,* 433 U.S. 72, 85, 97 S.Ct. 2497, 2505, 53 L.Ed.2d 594, 609 (1977). I find that all three of these factors are present, and therefore conclude that a procedural default did occur.

Pennsylvania R.A.P. 302(a) is stated in unmistakable terms: "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." The Superior Court expressly ruled that O'Halloran had waived the claim because of Rule 302(a). The Superior Court also stated that the counsel-waiver grounds were "meritless." Slip op. at p. 8, n. 3. But such an alternative ruling on the merits does not constitute a waiver of the procedural rule. *U.S. ex rel. Caruso v. Zelinsky,* 689 F.2d 435, 440 (3d Cir.1982). The Superior Court's holding that the issue had been waived was consistent with a line of Pennsylvania cases including *Commonwealth v. Piper,* 458 Pa. 307, 309, 328 A.2d 845, 847 (1974). Rule 302(a) is similar to Pennsylvania Rules of Criminal Procedure 321 and 1123, both of which require issues to be raised in post-verdict motions if they are to be preserved as grounds for appeal. Rule 1123 recently was held by the Third Circuit

to be a procedural bar. *Neely v. Zimmerman*, 858 F.2d 144, 149 (3d Cir.1988).

The only cases to which O'Halloran has directed me in which an apparent failure to comply with Pa.R.A.P. 302(a) has been excused are cases involving claims of ineffective assistance of trial counsel. Those cases are not pertinent. The issue which O'Halloran failed to preserve was a Sixth Amendment challenge to the conduct of the trial judge, not a challenge to the effectiveness of trial counsel.

Having failed to comply with Pennsylvania's procedural rules on direct appeal, O'Halloran is barred from relying upon the counsel-waiver grounds in his habeas petition "absent a showing of cause for the non-compliance and some showing of actual prejudice resulting from the alleged constitutional violation." *Sykes*, 433 U.S. at 84, 97 S.Ct. at 2504, 53 L.Ed.2d at 606.

### Prejudice

■ I need not reach O'Halloran's asserted cause for his procedural default, because he has not shown that he suffered actual prejudice as a result of the alleged constitutional error. In order to show actual prejudice, O'Halloran must show that the trial judge in fact committed a constitutional error with respect to the counsel waivers. He must further show that the trial judge's error did more than create a possibility of prejudice: the error must be shown to have "worked to his actual and substantial disadvantage." *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397, 412 (1986), *citing United States v. Frady*, 456 U.S. 152, 171, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816, 832 (1982).

■ I have reviewed the transcripts of the counsel-waiver colloquies. I am convinced that the trial judge failed to do much that the Sixth Amendment required him to do. The trial judge did advise O'Halloran before the guilty plea that he had the right to a lawyer and that if he could not afford one, one would be appointed for him. N.T. July 12, 1982, pp. 7–8.

But the judge failed to conduct any inquiry whatsoever before accepting the counsel waiver to insure that O'Halloran understood the nature of the charges against him, the range of allowable punishments for violation of those charges, and possible defenses to those charges.[1] Those lines of inquiry should have been pursued before the counsel-waiver was accepted. *Von Moltke v. Gillies*, 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309, 321. "The fact that an accused may tell [the judge] that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility.... A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is entered." *Id.*

Most disturbing is the fact that when O'Halloran asked the judge "[d]o you think I need an attorney?" the judge merely replied "[w]ell, I'm not going to advise you in that regard. I'm telling you these are your rights. You also have the right, of course, to proceed without a lawyer." N.T. July 12, 1982, p. 8. The Supreme Court stated in *Faretta v. California*, that a defendant who proposes to waive counsel "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 582 (1975) (citation omitted). This requirement is magnified when the defendant proposes to follow his counsel-waiver with a guilty plea, rather than to represent himself at trial. *Von Moltke*, 332 U.S. at 721, 68 S.Ct. at 322, 92 L.Ed. at 319. In short, when O'Halloran asked the judge "do you think I need an attorney?" the judge should have replied, emphatically "Yes" and explained in detail the many reasons why. *See also McMahon v. Fulcomer*, 821 F.2d 934 (3d Cir. 1987).

---

**1.** The trial judge did advise O'Halloran about these considerations after accepting his waiver of counsel and before taking his plea. That belated advice did not cure the right-to-counsel violation.

O'Halloran's claim fails, however, because he has not shown that the trial court's error worked to his actual and substantial disadvantage. I conducted a hearing at which O'Halloran testified about how he believes he was prejudiced by the judge's error. He contended that had the judge advised him properly, he would have requested an appointed lawyer. He further contended that the lawyer would have convinced the judge to enforce the plea bargain O'Halloran had made earlier with the prosecutor as O'Halloran understood that bargain. O'Halloran contended that in addition to agreeing to drop several charges, the prosecutor had promised that he would receive the same sentence his co-defendant, Henderson, received. Since Henderson eventually was not sentenced to serve any term of imprisonment, O'Halloran contended he should not have been imprisoned either. In the alternative, O'Halloran argued that if the lawyer could not enforce the promise O'Halloran allegedly had obtained from the prosecutor, the lawyer at least would have informed him that he was at risk of imprisonment, in which case he would not have pleaded guilty.

O'Halloran's rather complicated assertion of prejudice rests in part upon speculation. I am convinced that had the judge properly advised O'Halloran, he would have requested an appointed counsel. I cannot accept, however, his argument that a lawyer would have convinced the judge to enforce the plea bargain according to O'Halloran's understanding of it, thereby sparing him a prison term. O'Halloran had already negotiated the plea bargain *before* he waived his right to counsel. The lawyer would therefore not have been there to witness the promise which O'Halloran claims the prosecutor made to him privately. It is speculation to suggest that a lawyer would have been able to enforce such a bargain, or to re-negotiate a better bargain for O'Halloran. O'Halloran has presented no evidence to support either theory.

O'Halloran did not contend, much less persuade me, that he was in fact innocent of the burglary to which he pleaded guilty,

or innocent of the other charges which faced him. I cannot presume, therefore, that had he gone to trial he would have been found not guilty, not only on the burglary charge but on the other charges which the prosecutor, in the absence of a plea bargain, would have been free to pursue.

Nor did O'Halloran establish that a lawyer would have materially aided him at sentencing. He introduced no evidence about any mitigating factor, for example, which existed but which he was unable to bring to the court's attention himself.

### Fourth Ground

■ O'Halloran also contends that the Superior Court on direct appeal violated his due process rights by allegedly stating in its memorandum that he had been represented by counsel when he pleaded guilty, when in fact he was not represented. No procedural default occurred with respect to this ground, since O'Halloran presented it at the first possible opportunity: in his allocatur petition to Pennsylvania's Supreme Court.

The Superior Court did mischaracterize what had taken place in the trial court. It was O'Halloran's co-defendant, Henderson, who had discussed his plea bargain with a lawyer. *Compare* N.T. July 12, 1982 pp. 21–22; slip op. at 6 (July 26, 1985). Such an error, however, does not create a constitutional ground independent of his counsel-waiver grounds.

### Conclusion

For the reasons stated above, I will deny O'Halloran's habeas petition. Because no authority of which I am aware interprets the prejudice element of the *Sykes* test in circumstances similar to those here, I conclude that there is probable cause to appeal.